CHRISTOPHER E. GRELL (NO. 88498)
RICHARD F. RESCHO (NO. 108086)
**LAW OFFICES OF CHRISTOPHER E. GRELL**
The Leamington
1814 Franklin Street, Suite 501
Oakland, California  94612
Telephone:  (510) 832-2980
Facsimile:   (510) 832-2986
grell@lawofficeofcgrell.com
rrescho2001@yahoo.com

Attorneys for Defendant
Robert FitzPatrick

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIFAST, INC., a Delaware Corporation; and BRADLEY MacDONALD, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>BARRY MINKOW, an individual, FRAUD DISCOVERY INSTITUTE, INC., a California corporation; ROBERT L. FITZPATRICK, an individual, TRACY COEHEN, an individual, SEQUENCE, INC., A Wisconsin service corporation, WILLIAM LOBDELL, an individual; ibUSINESS REPORTING, a California business organization of unknown form; and 'ZEEYOUSELF", an individual,<br><br>                    Defendants. | Case No.:  10 CV0382 (CAB) BGS<br><br>**DEFENDANT ROBERT L. FITZPATRICK'S REPLY TO PLAINTIFF MEDIFAST, INC.'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS AS PREVAILING SLAPP DEFENDANT AND REQUEST FOR RELIEF FROM LATE FILING**<br><br>Date:  July 20, 2012<br>Time:  1:30 P.M.<br>Courtroom:  2<br>**Judge:  The Hon. Cathy Ann Bencivengo**<br>**Magistrate Judge:  Bernard G. Skomal**<br>**Complaint Filed:  February 17, 2010**<br>**Trial Date:  None Set** |

## PRELIMINARY STATEMENT

Defendant Robert FitzPatrick and his attorney Christopher E. Grell ("Defendant") respectfully incorporate by reference and in Reply to Medifast's Opposition to Defendant's Motion for Attorneys' Fees and Costs, Defendant's Reply to Plaintiff Bradley MacDonald's Opposition to Defendant's

-1-

-2-

Motion for Attorney's Fees and Costs (See ECF 195), on the grounds that Medifast's Opposition and objections, claims of fraud, misrepresentation, etc. are the same basic objections, etc. that were raised in McDonald's Opposition (ECF 175) to Defendant's Motion. Christopher E. Grell also incorporates as if set forth herein, Christopher E. Grell's Opposition to Plaintiff Bradley MacDonald's Motion for Rule 11 Sanctions (ECF 180) on the grounds that Medifast's Opposition to Defendant's Motion for Attorneys Fees and Costs (ECF 200) contains the same essential objections and claims made by MacDonald in his Rule 11 Motion against Grell which Grell filed an Opposition to (ECF 184).

In short, because of Defendant's counsel's inadvertent failure to file a timely reply to Medifast's Opposition to Defendant FitzPatrick's Motion for Attorneys' Fees and Costs, Defendant has incorporated the previous Reply Brief to MacDonald's Opposition and Defendant's Opposition to MacDonald's Rule 11 Motion on the grounds Defendant's Reply to MacDonald's Opposition to Defendant's Motion for Attorneys' Fees and Costs and FitzPatrick's Opposition to MacDonald's Rule 11 Motion (ECF 184 ) contain the same or similar statements and claims applicable to the claims and opposition Medifast raises in their Opposition to Defendant's Motion for Attorneys' Fees and Costs as to Plaintiff Medifast (ECF 200).

Because Defendant and defense attorneys' Reply Brief and Opposition apply equally to many of the same claims and statements made in Medifast's Opposition, incorporation of Defendant's Reply Brief and Rule 11 Opposition saves time and eliminates any prejudice to Defendant Medifast who is represented by the same attorneys representing Plaintiff MacDonald since they were served with Defendants Reply Brief (ECF 184) and Opposition (ECF 187).

Defendant FitzPatrick also joins in the Minkow Defendant's Reply regarding the reasonable value of Christopher E. Grell's fee rate since Grell has many more years of experience. (ECF 202.)

In short, Defendant respectfully submits that the reason this Reply is a day late is due to the fact that Defendant's present medical condition and the medications he is taking for his advanced Stage IV Prostate Cancer, as well as his previous stroke, has materially affected his ability to work and concentrate. As a result of Grell's medical conditions, defense counsel inadvertently failed to calendar the July 13, 2012 Reply due date so that a more detailed Reply could be filed in time for the July 13, 2012 filing deadline. As set forth in **Exhibits A and B**, the redacted medical reports of David Kornguth, M.D., and Robert Belknap, M.D, both doctors outline Defendant counsel's current medical condition and the impact they had on his ability to work.

Defendant's attorney, Christopher E. Grell, realized his mistake on Friday July 13th, after receiving Barry Minkow Defendants' Reply Brief.

In order to get this Reply filed on the 13th, Defense counsel immediately prepared this Reply. Unfortunately, defense counsel's secretary left early because of her 40th High School Class Reunion and was unavailable to e-file this Reply on time. (The other people in my office did not have the current password necessary to e-file this Reply.) (See **Exhibit C**.)

Since Defendant's Reply to Plaintiff MacDonald's Opposition to Defendant's Motion for Fees and Costs and Defendant's Opposition to Plaintiff MacDonald's Rule 11 Motion are responsive to Medifast's Opposition, there is no prejudice to Plaintiff as a result of the delay.

Given the importance of demonstrating that Defendant does oppose Medifast's Opposition, and the claims being made, there is good cause to excuse Defendant's one-day delay in filing a Reply Brief. In short, it is important that this Court knows that Defendant Robert FitzPatrick and his counsel, Christopher E. Grell, deny and object to Plaintiff Medifast's claims and accusation set forth in Medifast's Opposition to Defendant's Motion for Attorneys' Fees and Costs for the same basic reasons

set forth in Defendant's Reply to MacDonald's Opposition (ECF 177) and in attorney Christopher E. Grell's Opposition to MacDonald's Rule 11 Motion (ECF 184).

This is Defendant and his counsel's first failure to file anything in an untimely manner. (ECF 177 and ECF 184.)

I, Christopher E. Grell, declare under penalty of perjury under the Federal laws of the United State of America that the foregoing is true and correct.

Date: July 16, 2012

Respectfully submitted,

LAW OFFICES OF CHRISTOPHER E. GRELL

By:   s/Christopher E. Grell
CHRISTOPHER E. GRELL
Attorneys for Defendant
ROBERT L. FITZPATRICK

# EXHIBIT A

David Kornguth, M.D.
139 Townsend Street
San Francisco, CA 94563
April 12, 2012

Attending Physician's Statement

RE: Chris Grell

I certify that I am the Radiation Oncologist of record for Christopher Grell. He was diagnosed with advanced prostate cancer that had spread to his lymph nodes. The prostate cancer was extensive and impaired his ability to control his urine. It led to fatigue, weakness, anxiety and depression. He was treated at our institution with daily radiation sessions to the pelvis and prostate over the course of 9 weeks. He was given his daily radiation treatments over a 71 day period from 10/26/2011 to 1/5/2012. He also received concurrent hormonal manipulation which continues to this day and will continue for at least 1.5 years. He is administered regular doses of Lupron, which makes his testosterone level undetectable. This drug has contributed to depression, weakness and hot flashes. His prostate cancer has responded to treatment, but his urinary and constitutional side effects remain significant. Radiation and hormonal therapy have contributed to Mr. Grell's disease state to make performing duties of daily activities challenging and sometimes not possible. His urinary control has been erratic even before treatment began and remains a problem area even now. He has advanced stage prostate cancer and has an impaired ability to perform the activities of work.

Other contributing comorbidities have made his situation even worse. He had a stroke in 2010 and as struggled with chronic depression. He has been compliant with all treatments, even when they have adversely impacted his ability to work. Because of his stroke and prostate cancer, he has to see multiple specialists and coordinate scheduling, which is a challenge to conduct work.

Please feel free to contact me with any questions.

Sincerely,

David Kornguth, M.D.
Chief, Radiation Oncologist Division
Golden Gate Cancer Center

Enclosure

Exhit A
p.1 of 3



DISABILITY IN...
DISABILITY B...
1-800-7...

## ATTENDING PHYSICIAN'S STATEMENT

Dear Doctor: The information you provide on this form is crucial to the consideration of the patient's claim. The more information you can initially provide will both expedite our decision and may reduce our need to request additional information from you in the future. Attaching copies of all clinical lab data, tests (CAT Scans, MRIs, treadmill, EKGs, etc.) hospital discharge summaries, and your office or chart notes may answer additional questions. Any cost associated with completion of this form should be billed to the patient. Please mail this form completed in black ink directly to ~~[redacted]~~ at the address noted above.

| PATIENT'S NAME | DATE OF BIRTH | CLAIM NUMBER |
|---|---|---|
| Christopher E Grell | 01/24/1953 | [redacted] |

1. **DIAGNOSIS**
   (a) Active diagnosis(es), including any associated complications. For mental health conditions, provide the Global Assessment of Functioning (GAF) score. Current _____ Highest level in past year _____
   
   Prostate Cancer, Advanced
   
   (b) Is the diagnosis the result of an accident? ☒ No  ☐ Yes  If yes, provide details.
   
   (c) Symptoms: List current symptoms, frequency and severity as reported by your patient. (Quantify severity using the standard 1-10 scale, with 10 being the most severe.)
   
   Urinary Incontinence (9)   Fatigue: (10)
   Weakness (lack of mobility) (9)   Pelvic/Hip Pain: Varies 5-10
   
   (d) Clinical findings/diagnostic test results: Attach copies of clinical findings/diagnostic test results supporting the diagnosis(es). Examples include x-ray reports, lab data, EKGs, GXTs, physical exam findings, biopsy reports.
   
   (e) Has your patient ever had the same or similar condition? ☒ No  ☐ Yes  If yes, state when and describe.
   
   (f) Was your patient referred to you by another provider? ☒ No  ☐ Yes  If yes, provide names & addresses.
   
   Self Referred
   
   (g) Have you referred your patient to other providers or have other providers seen your patient?  ☐ No  ☒ Yes
   If yes, provide names and addresses.
   Dr. Henry Neuwirth, Urology
   San Rafael, CA

2. **TREATMENT PLAN**
   (a) Current treatment: Include specific pharmacologic and non-pharmacologic treatments currently prescribed and planned duration of treatment. Note dosages and frequency of any medications.
   
   See Attached. Radiation therapy Completed, Lupron every 3 months
   
   (b) To your knowledge is your patient compliant with the recommended treatment? ☒ Yes  ☐ No  If no, why not?

3. **DATES AND FREQUENCY OF MEDICAL CARE**

| | Month | Day | Year |
|---|---|---|---|
| (a) Date of first treatment/examination | 7/29/2011 | 29 | 2011 |
| (b) Date of most recent treatment/examination | 4 | 12 | 2012 |
| (c) Date of next appointment | 7 | | 2012 |
| (d) Frequency of treatment  ☐ Weekly  ☐ Monthly  ☒ Quarterly  ☐ Other | | | |

THE HOME OFFICE WILL ACCEPT A FAX TRANSMISSION OF THIS ORIGINAL, SIGNED DOCUMENT
FAX# (414) 625-1526

15-0301 (1111)    WORD B-LS (Page 1 of 2)

Exhibit A p. 2 of 3

4. ACTIVITIES AND RESTRICTIONS
   (a) List the principal occupational duties/activities reported by your patient. (Please do not just list the occupation or job title.) Writing, meeting with clients, analyzing legal briefs, preparing statements, attending court cases
   (b) Have you restricted your patient from performing any of his or her occupational duties/activities? ☐ No ☐ Yes
       I have not been asked to
   (c) Is your patient functionally limited in his or her ability to perform any of his or her occupational duties/activities?
       ☐ No  ☒ Yes   If you checked NO, proceed to the signature section of this form.
   (d) If you have restricted your patient or if your patient has limitations in his or her ability to perform his or her occupational duties, describe the specific restrictions or limitations and the effective date.
       Restricted/limited as of ___/___/___   Restrictions/limitations:

   (e) Please provide the medical basis for your recommendations.

   (f) To the best of your knowledge, is your patient performing any work activities in any capacity? ☐ No ☒ Yes
       If yes, what work activities is your patient performing? I don't know. Some work is being performed.

5. PROGNOSIS
   (a) Until what date do you anticipate the work restrictions/limitations described in 4(d) will be medically necessary? NA
   (b) What specific parameters will you be monitoring to assess your patient's ability to return to work without restrictions? PSA level (blood test); Scans as necessary; Physical exam
   (c) Could your patient work in another occupation, not requiring the restrictions noted in 4(d)? ☒ No ☐ Yes
       Please explain the basis for your response.
   (d) Is your patient motivated to return to his or her usual work on a full-time basis? ☒ Yes ☐ No  If no, please explain.
   (e) Are you aware of any non-medical factors, such as bankruptcy, loss of professional license, personal choice, etc., which inhibit the patient from wanting to or being able to return to his or her usual or other work? ☒ No ☐ Yes
       If yes, please explain.

6. HANDLING FUNDS
   If this patient is NOT capable of endorsing checks or directing the use of check proceeds, mark this box: ☐
   If you checked the box above, provide the name of the patient's legal guardian if one has been appointed or the name of the person holding a durable power of attorney. _____

7. REMARKS  Patient motivated to work, but medical condition prevents him from doing so.

PLEASE SEND A COPY OF YOUR OFFICE NOTES WITH THIS FORM

For your protection some states require us to inform you that any person who knowingly files a statement of clai containing false or misleading information is subject to criminal and civil penalties, depending on the state. Su actions may be deemed a felony and substantial penalties may be imposed. In New York, the penalty shall be a fi not to exceed $5,000 and the stated value of the claim for each such violation. In California and other states, a person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may subject to fines and confinement in state prison.

PLEASE PRINT
NAME OF LICENSED ATTENDING PHYSICIAN: David Kornguth
DEGREE: MD
SPECIALTY: Radiation Onc.
TELEPHONE NUMBER: (415) 541-0800
STREET ADDRESS: 1339 Townsend St
CITY: San Francisco
STATE: CA
ZIP CODE: 94107
TAX ID NUMBER: 26-4439143

David Kornguth, M.D.   DATE: 4/12/2012

CLAIM NUMBER

Exh. A p.3 of 3     Page 2 of 2

# EXHIBIT B

Robert E. Belknap M.D.

655 Redwood Hwy., Suite 375

Mill Valley, CA 94941

RE: Christopher E. Grell

I certify that I am physician of record for Christopher Grell, as stated in my declaration of July 26, 2010. On June 14, 2010, Christopher was admitted through the emergency department of Marin General Hospital by Dr. John Zecherle to the hospitalist service where his attending physician was Dr. Ray Brindley, hospital internist, who diagnosed left thalamic infarction of the brain with right sided clumsiness, ataxia, and paresthesias in upper and lower extremity due to his cerebrovascular accident/infarction. Christopher was seen in consultation by the on-call neurologist, who confirmed the acute left posterior thalamic stroke, which he dated to June 10, 2010, and cited contributory risk factors as age, tobacco use, hyperlipidemia. Christopher received an extensive workup for hypercoagulable state during his Marin General Hospital stay looking for any inherent blood-borne factors, such as abnormal proteins, which may have caused his infarction in the brain. None were identified. He was placed on aspirin and Lipitor to prevent further brain injury. His smoking caused an elevation in his CEA level, and he was strongly advised to followup with his primary care internist to repeat a CEA level after he stopped smoking.

Other comorbidities and inciting factors leading up to his stroke included chronic depression, stemming from the death of his wife in June, 1991, for which he has been treated by Dr. Barbara MacDonald on three antidepressant agents. In addition, he suffers chronic pain in the axial spine with recurrent back spasm, necessitating treatment with muscle relaxants and opioids and anxiolytics. He has a very high drive to work, and returned to work far too soon after his stroke. Unfortunately, without adequate time to recover, he developed progression of pain and disabling muscle spasm due to his altered gait with right sided weakness and ataxia, which necessitated placing him on Kadian 60 mg every 12 hours, a timed-release morphine sulfate preparation. He did not participate in post-stroke rehabilitation, although he did a good job in risk factor reduction. His pain management program, with morphine for baseline control and Norco for breakthrough pain, impairs his ability to concentrate, causes short term memory problems, fatigue and drowsiness, visual-perception problems which affect adversely his ability to recall and analyze his work product.

In my experience, many able-bodied men greet a new stroke with denial. The experience of sudden, unexpected, disabling weakness in one half of the body, accompanied by debilitating fatigue, clumsiness, numbness, tingling, weakness, staggering or limping gait, all symptoms which conspire to produce a severe fear

Exhibit B

and dread, which drive the afflicted individual into inappropriate resumption of demanding tasks. The strain of work accumulates on top of the demands and activities of daily living. The individual, who is slowed significantly, often reacts by redoubling his efforts, unable to hear or perceive the need for a reduction of activity and strain, in order to allow the nervous system to recover. Post-stroke rehabilitation is complex, long, and drawn out, and inevitably conflicts with work. Christopher has manifested all these problems. He has a multifactorial illness which demands the attention of multiple specialists, and it is my clinical opinion that his combined deficits in the motor, sensory, perceptual, and cognitive spheres, require him to be relieved of his professional responsibilities, for a period of 6 months from now. Until he is relieved of his professional duties, I believe his recovery will be delayed, and his health placed at great risk. He is now beginning to accept the absolute necessity of a period of post-stroke rehabilitation. He must devote himself to rest and recovery, enrolled in an outpatient rehabilitation program, which will enable him to resume his legal profession later. In my professional opinion, there is no way he can continue his legal duties now. If I can be of further help, please do not hesitate to write or call, 415-384-0506. Mr. Grell requested this letter on August 25, 2010, in writing, and it is entirely my responsibility that he did not receive a timely reply. Please accept my apology.

" I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on Ocober 7, 2010 in Mill Valley, California, in accordance with the laws of the state of California."

*Robert E. Belknap MD*

Robert E. Belknap M.D.
Internal medicine and family practice
California license A. 24275

# EXHIBIT C

| | |
|---|---|
| **Subject:** | Urgent: Password lockout - Need to file reply for Fitzpatrick in Medifast v. Minkow |
| **From:** | Jeanette Waight (waight@yahoo.com) |
| **To:** | efile_information@casd.uscourts.gov; |
| **Cc:** | grell140@yahoo.com; kjauyoung@yahoo.com; |
| **Date:** | Friday, July 13, 2012 5:12 PM |

Case # 3;10-cv-00382-CAB-BGS

Dear Clerk, Please email new pass word to : Mr. Grell today:

grell140@yahoo.com

Thank you,

Jeanette M. Waight
Legal Assistant

Exhibit C